**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

The Republic of Iraq,

> Ministry of Oil
> P.O. Box 19244
> Zayouna Post Office
> Oil Complex Building (H.Q.)
> Port Saaed St.
> Baghdad, Iraq

> > *Petitioner*,

> *v.*

The Republic of Turkey,

> Ministry of Energy and Natural Resources
> Türk Ocağı Caddesi No:2
> 06100 Çankaya
> Ankara, Turkey

> > *Respondent*.

Civil Action No. _____

**PETITION FOR CONFIRMATION, RECOGNITION,
AND ENFORCEMENT OF FOREIGN ARBITRATION AWARD**

The Republic of Iraq ("***Iraq***") by and through the undersigned counsel, hereby petitions this Court for entry of a judgment pursuant to Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 207 (the "***FAA***") and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 19, 1958, 21 U.S.T. 2517 (the "***New York Convention***"):

> (i)    confirming, recognizing, and enforcing an arbitration award rendered in its
> arbitration against the Republic of Turkey ("***Turkey***");

(ii)     entering judgment in Iraq's favor against Turkey in the amount of the

Award with interest; and

(iii)    granting Iraq such relief as the Court deems just and proper.

This Petition is supported by an accompanying Declaration of James L. Loftis, dated 10

April 2023 ("***Loftis Decl.***"), with exhibits, and states as follows:

## <u>NATURE OF ACTION</u>

1.      Iraq brings this proceeding under Section 207 of the FAA[1] and Article III of the

New York Convention to confirm this final, binding arbitration award executed by the Tribunal

on February 13, 2023 and officially notified to the Parties on March 23, 2023 (the "***Final***

***Award***"), by a three-member arbitral tribunal (the "***Tribunal***") duly constituted under the Rules

of Arbitration of the International Chamber of Commerce ("***ICC***") captioned as "*The Republic of*

*Iraq v. The Republic of Turkey*, ICC Case No. 20273/AGF/ZF/AYZ/ELU" (the "***Arbitration***").

Loftis Decl., ¶ 3.

2.      The Arbitration was based on the Crude Oil Pipeline Agreement, signed by the

Republic of Iraq and the Republic of Turkey in 1973, with protocols, addenda, and amendments

dated 1976, 1985, and 2010 (the "***ITP Agreements***"). The ITP Agreements between Iraq and

Turkey require (*inter alia*) Turkey (or its nominee) to load and store crude oil coming from Iraq

at the Turkish port of Ceyhan only upon the instructions of the Ministry of Oil of the Republic of

Iraq.

3.      Article 10 of the 2010 Amendment (which replaces Article 21 of the 1973

Agreement) governs the parties' disputes (the "***Arbitration Agreement***"), and states as follows:

---

[1] 9 U.S.C. § 207.

The Sides[2] shall take all reasonable steps to solve any dispute that may arise during the implementation and interpretation of this Amendment amicably and through cooperation spirit and shall immediately start discussing the matter with each other in order to reach a solution. If any conflict or disparity arises between the Sides about the implementation and interpretation of this Amendment or any other issue that is not specified in the Agreement during its validity period or thereafter and if the conflict can not be resolved through amicable discussions in 4 months starting from the date the negotiations begin, that conflict shall be resolved according to the arbitration rules of the International Chamber of Commerce. The arbitration board shall be composed of 3 arbitrators and the appointment of the arbitrators shall be carried out according to the arbitration rules of International Chamber of Commerce. Each Side shall appoint an arbitrator and the two arbitrators who are appointed as mentioned above shall appoint a third arbitrator who is not a citizen of the Republic of Turkey or the Republic of Iraq. If any one of the Sides does not appoint an arbitrator in 30 days time after arbitration request date, then the other Side may request from the International Chamber of Commerce to appoint an arbitrator. If the third arbitrator can not be determined within 30 days time after the two arbitrators are appointed then the third arbitrator (the chairman) shall be appointed by the arbitration board of the International Chamber of Commerce provided that the arbitrator shall not be a citizen of Republic of Turkey or Republic of Iraq. The arbitration place shall be Paris, France. The applicable law shall be French Law. Arbitration language shall be English. The charges of the arbitration process shall be determined by the arbitration board. However the charges that shall be determined shall not be more than the charges that are specified in the tariff which is issued in compliance with the rules of the International Chamber of Commerce. *The award of the arbitration board shall be final and shall have a binding effect on the Sides.*[3]

    4.      The Final Award in Iraq's favor found Turkey in breach of the ITP Agreements and ordered Turkey to pay Iraq $1,471,390,486.05 before interest for breaches of the Agreements.[4] The Tribunal held that Turkey has breached its obligations under the ITP Agreements since May 2014, because Turkey caused Iraqi crude oil pumped by the Kurdistan Regional Government (the "***KRG***") to be loaded according to the KRG's instructions, without the

---

[2] The term "Sides" in the Arbitration Agreement is defined in the 2010 Amendment as meaning "the Government of the Republic of Iraq, as represented by the Ministry of Oil and the Government of the Republic of Turkey as represented by the Ministry of Energy and Natural Resources."

[3] Ex. B-4, at 10-11 (emphasis added).

[4] This is the net amount of the principal sums awarded on the claims and counterclaims. Calculations of interest due on these sums are ongoing, and Iraq reserves the right to amend this Petition to provide final calculations in due course or as ordered by the Court.

authorization of the Ministry of Oil of the Republic of Iraq and in contravention of its explicit instructions.

5.      The United States is a party to the New York Convention and has implemented it pursuant to Chapter 2 of the FAA. *See* 9 U.S.C. §§ 201 *et seq*.

6.      In accordance with the express mandate of Congress and the obligations assumed by the United States under the New York Convention, this Court must enforce the Final Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

7.      The grounds specified in the New York Convention are extremely limited.

8.      No ground barring enforcement exists here.

9.      Accordingly, Iraq is entitled to entry of a judgment as requested.

## **PARTIES**

10.     Iraq is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, represented by the Ministry of Oil and acting through the Minister of Oil, His Excellency Mr. Hayyan Abdul Ghani. The address of the Minister of Oil is:

> Ministry of Oil
> Office of the Minister
> P.O. Box 19244
> Zayouna Post Office
> Oil Complex Building (H.Q.)
> Port Saaed St.
> Baghdad, Iraq

11.     Turkey is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, represented by the Ministry of Energy and Natural Resources and acting through the Minister of Energy and Natural Resources, His Excellency Mr. Fatih Dönmez. The address of the Ministry of Energy and Natural Resources is:

Ministry of Energy and Natural Resources
Office of the Minister
Türk Ocağı Caddesi No:2
06100 Çankaya
Ankara, Turkey

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, as this is a civil action seeking confirmation of an award rendered in an arbitration "falling under the [New York] Convention." This Award is governed by the New York Convention because the Award was rendered in France (a New York Convention contracting state), and because Turkey and Iraq are contracting states to the New York Convention. *See* 9 U.S.C. § 202.

13.     This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a), which provides that this Court can exercise jurisdiction over a foreign state in an action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607.

14.     Turkey is not entitled to sovereign immunity under 28 U.S.C. § 1605 because it has waived its immunity for purposes of enforcing an arbitral award. *See* 28 U.S.C. § 1605(a)(1); *see Tatneft v. Ukraine,* 301 F. Supp. 3d 175 (D.D.C. 2018), *aff'd*, 771 Fed. App'x 9 (D.C. Cir. 2019), *and aff'd*, 21 F.4th 829 (D.C. Cir. 2021), ("[I]f a foreign state agrees to arbitrate in a country that has signed the New York Convention, it waives its sovereign immunity in all of the signatory countries by virtue of the fact that 'when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory state must have contemplated enforcement actions in other signatory states.'").

15.     Further, Turkey is not entitled to sovereign immunity under 28 U.S.C. § 1605, because this case is brought to recognize and enforce arbitration awards that "[are] or may be

governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

16.     This Court has personal jurisdiction over Turkey pursuant to 28 U.S.C. § 1330(b), which provides that this Court can exercise jurisdiction over a foreign state in an action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607 and where service has been made under 28 U.S.C. § 1608.

17.     Venue is proper in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f).

## FACTUAL BACKGROUND AND FINAL AWARD

18.     The Arbitration involved a dispute between Iraq and Turkey regarding Turkey's breach of its obligations under the ITP Agreements, in which Turkey intentionally disregarded the instructions of the Ministry of Oil of the Republic of Iraq (the "*Iraqi Side*" or the "*Iraqi Ministry of Oil*") regarding the transportation, storage, and loading of crude oil pumped from Iraq to the port of Ceyhan in Turkey—even though the ITP Agreements expressly provide the Iraqi Ministry of Oil with the exclusive right to provide such instructions to Turkey and obligate Turkey to operate the Pipeline in accordance with those instructions. As a result of Turkey's breaches of the ITP Agreements, the Tribunal ordered Turkey to pay Iraq the net sum of $1,471,390,486.05 in the Final Award.[5]

19.     On August 27, 1973, Iraq and Turkey entered into ITP Agreements,[6] for, *inter alia*, the operation of crude oil pipelines running from the Iraqi oil gathering and storage facilities in Kirkuk, Iraq, to the Turkish port and storage and loading facilities in Ceyhan, Turkey.

---

[5]  The Tribunal also ordered interest to be calculated and paid on the sums awarded for the claims and counterclaims granted in the Award. Petitioner reserves the right to amend this Petition to state the total amount after interest calculations are completed.

[6] True and correct copies of the ITP Agreements are attached to the Loftis Decl. as Exhibits B-1 – B-4.

20.     The ITP Agreements consist of the Crude Oil Pipeline Agreement dated August 27, 1973, and its amendments, addenda, and protocols, including:

     i.    The 1976 Protocol, entered into between Iraq and Turkey and their nominees Iraq National Oil Company and Boru Hatlari ile Petrol Tasmina A.Ş. ("**BOTAŞ**"), respectively, which set forth in detail the Parties' obligations relating to the construction and operation of the original 40-inch pipeline and related facilities;

     ii.   The 1985 Addendum, in which the Parties agreed to construct and operate a 46-inch pipeline in addition to the original 40-inch pipeline constructed and operated in accordance with the 1973 Agreement and 1976 Protocol (the 40-inch and 46-inch pipelines shall be collectively referred to as the "***ITP Pipelines***"); and

     iii.  The 2010 Amendment, which amended other terms of the previous agreements and provided an amended procedure for the resolution of disputes between the Parties through ICC arbitration in Paris.[7]

21.     Under the ITP Agreements, Turkey and BOTAŞ are required to act in accordance with the instructions of the Iraqi Side in relation to the operation of the ITP Pipelines and storage and loading facilities in Ceyhan. This term – "Iraqi Side" – is expressly defined in Article 1 of the 2010 Amendment as "The Ministry of Oil of the Republic of Iraq". Article 1 of the 2010 Amendment also defines the "Turkish Side" as the Turkish Ministry of Energy and Natural Resources. The relevant provisions of the ITP Agreements include *inter alia*:

---

[7] The Arbitration Agreement is set out in full in ¶ 3 above.

(a) <u>Article 3 of the 1976 Protocol, "The Transport and Loading of Crude Oil"</u>: Under this provision, the Turkish Side undertook "[t]o ensure and facilitate the transit, loading and export of crude oils coming from Iraq across Turkish territory and to ensure and facilitate its continuous flow and arrival at the terminal in the quantities pumped *in accordance with the instructions and requirements of the Iraqi side*."[8] In addition, the Turkish Side is obligated to "ensure pumping and tanker loading operations for crude oils coming from Iraq *in accordance with the instructions and requirements of the Iraqi side*."[9]

(b) <u>Article 7 of the 1976 Protocol, "Crude Oil Movement"</u>: This Article provides that "[s]ince the Turkish side undertakes the transport, pumping and loading operations within Turkish territory, *it shall adhere to the instructions of the Iraqi side* in relation to the movement of crude oil coming from Iraq in all centers of storage, disposal and at the terminal."[10]

(c) <u>Article 2.3 of the 2010 Amendment</u>: This Article amends Paragraph 2 of Article 17 of the 1973 ITP Agreement and provides that the "Turkish Side guarantees to load all the Crude Oil coming from Iraq *to the tankers that will be instructed by the Iraqi Side*."[11]

(d) <u>Article 4.4 of the 2010 Amendment</u>: This Article confirms the rights exercised by the Ministry of Oil representatives to access the ITP facilities in Turkish territory: "The Iraqi Side undertakes to pay the remuneration for transportation of the total

---

[8] Ex. B-2 at 2 (emphasis added).
[9] *Id.*
[10] Ex. B-2 at 4 (emphasis added).
[11] Ex. B-4 at 4 (emphasis added).

quantity of Crude Oil that is delivered to Ceyhan Terminal including the quantities that are delivered to Companies in Turkey. Measurements regarding transportation and loading tonnages of the Crude Oil that are transmitted through the ITP shall be carried out jointly by the Turkish and Iraqi representatives according to their respective metering systems."[12]

22.     Notwithstanding the ITP Agreements, in December 2013, Turkey began flouting its obligations by transporting, loading, and storing Iraqi crude oil pumped by the Kurdistan Regional Government (the "***KRG***") without the Iraqi Side's authorization and in direct contravention of its explicit instructions.

23.     In December 2013, the KRG and Turkey began to use the 40-inch pipeline to transport crude oil from the Kurdistan Region of Iraq into storage tanks at the port of Ceyhan, Turkey. This use of the 40-inch pipeline was carried out without Iraqi Side's authorization or consent. Instead, the Turkish Side worked in concert with the KRG and took instructions from it.

24.     Then on May 21, 2014, Turkey began loading crude oil pumped through the ITP Pipelines and Facilities onto a tanker at Ceyhan in accordance with the KRG's instructions. The KRG is not a party to the ITP Agreements and has no right to provide loading instructions. Nonetheless, Turkey worked with the KRG to pump crude oil through the ITP Pipelines and loaded the crude oil in accordance with the instructions of the KRG, and contrary to the Iraqi Side's instructions.

25.     On May 23, 2014, Iraq commenced the Arbitration by submitting its Request for Arbitration against Turkey to the ICC.

---

[12] Ex. B-4 at 6.

26.     In the Final Award, officially notified to the parties on March 23, 2023, the Tribunal found that Turkey breached its obligations, *inter alia*, under (i) Article 3 of the 1976 Protocol, which requires Turkey "to ensure and facilitate the transit, loading and export of crude oils coming from Iraq across Turkish territory and to ensure and facilitate its continuous flow and arrival at the terminal in the quantities pumped *in accordance with the instructions and requirements of the Iraqi side*,"[13] (ii) Article 7 of the 1976 Protocol, which requires Turkey to "*adhere to the instructions of the Iraqi side* in relation to the movement of crude oil coming from Iraq in all centers of storage, disposal and at the terminal,"[14] (iii) Article 4.4 of the 2010 Amendment, which requires Turkey to provide access to Iraqi personnel to the Iraqi office at the Ceyhan storage facility at all times,[15] and (iv) Article 2.3 of the 2010 Amendment, requiring the Turkish Side to "load all the Crude Oil coming from Iraq to the tankers that will be *instructed by the Iraqi Side*."[16]

27.     Turkey's violations of the ITP Agreements continue to this day, but in the Arbitration, Iraq limited its claims for damages to the period starting May 21, 2014 and ending on September 30, 2018. Iraq has reserved its right to seek damages for the period after September 30, 2018 in future proceedings.

28.     After the Tribunal received written witness statements, cross examination, expert reports, voluminous exhibits, extensive briefing and three merits hearings, on March 23, 2023, the ICC officially notified the parties that the Tribunal issued the Final Award. Loftis Decl., ¶¶ 9-10.

---

[13] Ex. B-2, at 2 (emphasis added).
[14] Ex. B-2, at 4 (emphasis added).
[15] Ex. B-4, at 4.
[16] Ex. B-4, at 4 (emphasis added).

29.    The Tribunal ordered and declared the following:

 i. Declared "that [Turkey] has breached Articles 3 and 7 of the 1976 Protocol and Article 2.3 of the 2010 Amendment by loading Iraqi oil at Ceyhan in breach of instructions issued by the Iraqi Ministry of Oil since 21 May 2014" Loftis Decl., ¶ 11(i);

 ii. Declared "that [Turkey] has breached Article 4.4 of the 2010 Amendment by denying Iraqi personnel access to the Iraqi office at the Ceyhan port facility between January and March 2014" Loftis Decl., ¶ 11 (ii);

 iii. Ordered "that [Turkey] shall load all oil in the storage tanks at Ceyhan as at the date of this Award in accordance with the instructions of the Iraqi Ministry of Oil, as required by the ITP Agreements" Loftis Decl., ¶ 11 (iii);

 iv. Declared "that [Turkey] is liable to pay [Iraq] forthwith compensation in the amount of USD **1,997,976,023.50** (one billion, nine hundred and ninety-seven million, nine hundred and seventy-six thousand and twenty-three US dollars and fifty cents) as a result of the breaches set out in (b) and (c) above" Loftis Decl., ¶ 11(iv);

 v. Dismissed "[Iraq]'s claims for breach of Article 2.4 of the 2010 Amendment in relation to the exclusive use of the Pipelines" Loftis Decl., ¶ 11(v);

 vi. Declared "that a situation of force majeure existed in the Republic of Iraq between 1 March 2003 and 31 July 2007, such that [Iraq] was excused from performing its Minimum Guaranteed Throughput obligations under the 1985 Addendum between these dates" Loftis Decl., ¶ 11(vi);

 vii. Declared "that the [Turkey] is credited the sum of **USD 67,607,024.62** (sixty-seven million, six hundred and seven thousand and twenty-four US dollars and sixty-two cents) for Minimum Guaranteed Throughput fees payable by [Iraq] between 27 July 2011 and 31 December 2013, in accordance with article 3.2 of the 2010 Amendment, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(vii);

 viii. Declared "that [Iraq] breached article 2.7 of the 1985 Addendum between 1 August 2007 and 26 July 2011 and is liable to pay [Turkey] **USD 281,337,301.50** (two hundred and eighty-one million, three hundred and thirty-seven thousand, three hundred and one US dollars and fifty cents) as a result of this breach, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(viii);

 ix. Declared "that [Iraq] is liable to pay [Turkey] USD **58,000,000.00** (fifty-eight million US dollars) in respect of outstanding transportation fees from 1990, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(ix);

x.      Declared "that [Iraq] is liable to pay [Turkey] USD **70,676,675.27** (seventy million, six hundred and seventy-six thousand, six hundred and seventy-five US dollars and twenty-seven cents) in respect of underpaid transportation fees from 1990, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(x);

xi.     Declared "that [Iraq] is liable to pay [Turkey] USD 46,253,517.75 (forty-six million, two hundred and fifty-three thousand, five hundred and seventeen US dollars and seventy-five cents) in respect of outstanding transportation fees from 2003-2007, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(xi);

xii.    Declared "that [Iraq] is liable to pay [Turkey] USD 2,071,739.00 (two million, seventy-one thousand, seven hundred and thirty-nine US dollars) for reimbursement of expenses incurred by Iraqi personnel at Ceyhan, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(xii);

xiii.   Declared "that [Iraq] is liable to pay [Turkey] USD 639,279.31 (six hundred and thirty-nine thousand, two hundred and seventy-nine US dollars and thirty-one cents) for reimbursement of expenses relating to equipment, such amount to be set off against [Turkey]'s liability in (e) above" Loftis Decl., ¶ 11(xiii);

xiv.    Ordered "[Turkey] to pay forthwith to [Iraq] the sum of USD 1,471,390,486.05, after set off of the amounts in (e) and (h)-(n) above, subject to appropriate adjustments for interest" Loftis Decl., ¶ 11(xiv);

xv.     Ordered "[Turkey] to pay [Iraq] interest on the amount in paragraph (e) above at the average annual US dollar denominated Turkish bond rate from 1 January of the year following which the amount was incurred, compounded annually to the date of this Award" Loftis Decl., ¶ 11 (xv);

xvi.    Ordered "[Iraq] to pay [Turkey] interest on the amounts set out in paragraphs (i)-(l) above at the average annual US dollar denominated Turkish bond rate from 1 January of the year following which the amount was incurred, compounded annually to the date of this Award" Loftis Decl., ¶ 11(xvi);

xvii.   Ordered "[Iraq] to pay [Turkey] interest on the amounts set out in paragraphs (m)-(n) above at the average annual US dollar denominated Turkish bond rate from the date on which the debt was due or, if not such date is identifiable, from 1 January of the year following which the amount was incurred, compounded annually to the date of this Award" Loftis Decl., ¶ 11 (xvii);

xviii.  Ordered "[Turkey] to pay [Iraq] interest on the amount due to be paid to [Iraq] after all amounts owed by [Iraq] to [Turkey] have been set-off, at the average annual US dollar denominated Turkish bond rate, compounded annually from the date of this Award until payment in full" Loftis Decl., ¶ 11 (xviii);

xix.    Ordered "that each Party shall bear equally the costs of the arbitration fixed by the ICC Court in the amount of USD 1,810,000 and that each Party shall bear its own legal costs and expenses" Loftis Decl., ¶ 11 (xix).

30.    The Award is final and binding and subject to enforcement. The Final Award has not been set aside or suspended by a competent authority of the country in which, or under the laws of which, the Final Award was made. Loftis Decl., ¶ 14.

31.    Petitioner reserves the right to amend this Petition in the event of any corrections to the Award pursuant to article 36 of the Rules.

### COUNT I (CONFIRM, RECOGNIZE, AND ENFORCE ARBITRATION AWARD)

32.    Iraq repeats and realleges paragraphs 1 through 30 hereof, as if fully set forth within.

33.    Iraq, Turkey, France, and the United States are contracting parties to the New York Convention.

34.    The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*), because the Final Award arises out of an arbitral award "out of a legal relationship . . . which is considered commercial" conducted in France, a contracting state to the New York Convention. 9 U.S.C. § 202; *see also BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 242-43 (D.D.C. 2015), *aff'd*, 650 Fed. App'x 17 (D.C. Cir. 2016), and *enforcement granted*, 232 F. Supp. 3d 28 (D.D.C. 2017) (noting that "the commercial requirement [] is construed broadly" and satisfied when the underlying transaction is commercial in nature).

35.    Article IV of the New York Convention provides that a party applying for recognition and enforcement of an award, "shall, at the time of the application, supply: (a) [t]he

duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] or a duly certified copy thereof."

36.     A copy of the Final Award, duly authenticated and transmitted to Iraq, is submitted as Exhibit A to the Loftis Declaration.

37.     The Final Award was made at the place of the arbitration proceedings, which is Paris, France.

38.     In keeping with the strong U.S. federal policy favoring arbitration, confirmation proceedings under the New York Convention are generally summary in nature. *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011). The showing required to avoid summary confirmation is high, and the burden of proof rests with the party resisting confirmation. *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 35 (D.D.C. 2016), *aff'd*, 852 F.3d 1107 (D.C. Cir. 2017) (citing *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

39.     The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Moreover, "[a]rbitration awards are subject to 'very limited review' to avoid undermining the goals of arbitration, namely, settling disputes efficiently and avoiding lengthy and expensive litigation." *LaPrade v. Kidder, Peabody & Co., Inc.*, 94 F. Supp. 2d 2, 4–5 (D.D.C. 2000), *aff'd*, 246 F.3d 702 (D.C. Cir. 2001) (internal citations omitted).

40.     Pursuant to 9 U.S.C. § 207, Iraq is therefore entitled to an order recognizing the Final Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention. Iraq respectfully requests that this Court recognize and enforce the Final Award and enter judgment

in favor of Iraq and against Turkey in the amount of the Final Award with interest provided therein.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner moves this Court for an Order:

a. Recognizing, Confirming, and Enforcing the Final Award issued by the Arbitral Tribunal;

b. Entering judgment in conformity with the terms of the Final Award for $1,471,390,486.05, before post-breach, pre-Award interest to be determined;

c. Granting Iraq all applicable interest for the time period specified in the Final Award and at the rate specified in the Final Award;

d. Awarding interest, including post judgment interest, at the rate specified in the Final Award; and

e. Granting such other and further relief as the Court may deem just and proper.

Dated: April 10, 2023

VINSON & ELKINS LLP
By: */s/ Alden L. Atkins*
Alden L. Atkins (D.C. Bar No. 393922)
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
Telephone:  202-639-6613
Email:  aatkins@velaw.com

*Counsel for Petitioner*

James Lloyd Loftis
jloftis@velaw.com
Robert R. Landicho
rlandicho@velaw.com
Timothy J. Tyler
ttyler@velaw.com
Aurra Fellows
afellows@velaw.com
Kylie P. Terry
kterry@velaw.com
845 Texas Avenue, Suite 4700
Houston, TX  77002
Telephone:  +1.713.758.2222

OF COUNSEL:

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Andrew A. Bernstein
abernstein@cgsh.com
Laurie Achtouk-Spivak
lachtoukspivak@cgsh.com
Zeineb Bouraoui
zbouraoui@cgsh.com
12 Rue de Tilsitt
75008, Paris, France
Telephone: + 33 01 40 74 68 00

Boaz Morag
bmorag@cgsh.com
One Liberty Plaza
New York, NY 10006
+1.212.225.2000

*Co-Counsel for Petitioner*
*Pro hac vice motions to be filed*